Good morning, your honors. May it please the court, Bill Becker of Freedom X, representing the appellant and plaintiff in this case, Jim Riley, and Riley's American Heritage Farms. Pardon my frog voice. I'd like to reserve two minutes for retirement. Your honor, before I state the issue in the case the way I've framed it, I'd like to skip ahead to an issue, and that is that this court is bound by the law of the case from the prior panel's decision in this case. So I wanted to ask about that because I agree with you, but you would also agree that the prior panel issued its opinion. Since then, they've taken more steps, it seems, in an attempt to retract this prior policy. So it seems to me like we're not, and maybe this wasn't how far you were going to go, but I don't think we're in a position where it's just like, hey, we said there was a factual dispute about this, end of story. We really have to grapple with what has happened since then and has that changed, has that mooted out the case. And that's the part I wanted to skip over first because I wanted to emphasize something regarding the law of the case. The court relied on the Melendrez v. Arpaio Ninth Circuit decision in that case for its statement regarding prospective injunctive relief. And in the Arpaio case, the Sheriff's Department in Maricopa County was making traffic stops of illegal aliens, people who were in the country unlawfully. And the plaintiff in that case sought an injunction to stop that practice because he believed it to be discriminatory. And the Sheriff's Department argued in response to that, well, we're not doing that and we don't have any intention of doing that. Now fast forward to this case. You have a similar situation in this case where the school district is saying, we're not discriminating against Riley's Farm or Mr. Riley. We don't intend to discriminate against them. We're just not sending any field trips there anymore since this original instruction went out in 2018. But what, I'm trying to understand what the law of the case point is because law of the case means something was decided previously and in essence can't be re-litigated. So what is the issue that the prior panel determined that binds us now? Yes, thank you. So what the panel said in Riley 1 was although the school defendants dispute the existence of an ongoing unconstitutional policy, they still do. We have held that equity favors injunctive relief under those circumstances because a defendant cannot be harmed by an order enjoining an action it purportedly won't take. We've got the same thing. So is it your position that because there's a dispute as to whether there's an ongoing policy that alone is sufficient to order injunctive relief? What I'm saying is as a threshold matter, as a baseline, this court can grant injunctive relief. Even when there's, so even when there's just a dispute as to whether there's a policy? Yes. And that's what the court said. That's extraordinary. So a dispute of material fact somehow becomes the license to automatic injunctive relief? What case do you rely on for that proposition? No, Judge Sanchez, we're not saying that there are disputed facts that give rise to that. There are undisputed facts that give rise. We don't dispute, for instance, that the resolution that was passed by the school district states that they don't discriminate against Riley. We don't dispute that. We don't dispute the fact that they added Riley's Farm to their approved vendor list. We don't dispute the fact that they've instructed principals not to discriminate. None of that is disputed. So I think to... But what hasn't changed? And that's the issue here. But what are you asking for? I mean, what is going to resolve this? Like, what do they have to do to change the policy? Let's assume, and I know there's a dispute about whether there was a policy in the past. What is it that would satisfy Riley's to say there's no longer a policy here? Well, you've made me jump all the way to the end, Your Honor, so I'll go there. You always got to be versatile. I have some good things to say, but Your Honor, what we want is, I think, what we argued in the briefs. There has to be a legislative act, something that has... But what can they do? The school board, the school board adopts... Didn't they sort of already do that? I'm sorry? Didn't they sort of already do that with the resolution? No, that's not... The court read my briefs, and I know you did, because it says so on your website. But the fact is, is that the resolution has no legislative binding force. I understand. So what would take it to that? The school board could have another vote that has some legislative effect? The school board should adopt the policy, and here's what the policy ought to be. It ought to be that they assign the superintendent to do what they say, or what Judge Brunette, the trial court said below, which was that there were constraints on the principles in the decision to send field trips to various destinations. There are no constraints, and the way that there can be constraints, and reviewability, so that there can be some mechanism in place. You're never going to have a perfect mechanism. So there are several issues. I think you've got some 11th Amendment immunity problems, but just on the issue of redressability, is it your view that the district court could order the school district to implement a policy that you would want to written up? If your view is short of a resolution or the state disclaiming that they're trying to bar anyone from doing the field trips, how is it within the purview of the court to order the school district to implement a particular policy? Is that something that could happen under injunctive relief in your view? No, that's a fair question. Let me try to address it this way. The Friends of the Earth v. Laidlaw case pretty much set out a baseline standard where they have to demonstrate that they have fully eradicated the problem that occurred before, right? And somehow they have to demonstrate that. Well, if you use the language of that case... And I assume the school would say, and we've done that, all those three things that you just mentioned. The superintendent is telling people not to bar anyone. We have a resolution. They're on the vendors list. I guess my question is, how is this a redressable injury? What could the court do beyond what the school has already done in order to redress the injury you're claiming? Okay, but that presents a tribal issue. See, that's the problem because we're not disputing... Not if there's nothing else that the court can do. That's what I'm getting at. I'm trying to ask, what is that? This court can remand to have the trial court enjoin the school district to adopt a policy that addresses viewpoint discrimination. Yeah, okay. I'm not sure. That would be a proactive injunction. I'm not sure that the court can do, but what I think the district court could do is enter an injunction enjoining the policy that is disputed about whether it exists. Well, it could do that, a prohibitive injunction in that regard, but just to set up the picture the way it is right now. Principals are free to do whatever they want, essentially. There is no reviewability. There is no way to check them. They have unbridled discretion. The only thing that's needed there is to take away that discretion. How do you do that? Well, you lay it at the foot of the superintendent whose job it is to oversee the practices and policies of the school district. That's his job. By the way, I have other experiences in other cases where that's exactly what they've done now, so that the superintendent will then be the person who has to determine whatever mechanism they can make up. It's not something I could tell this court, but they can come up with some way to say, principals and teachers, whoever's deciding a field trip somewhere, you've got to establish somehow that you're not taking into account these unconstitutional considerations regarding that vendor's speech. Now, can I just confess, Judge Sanchez, I know this seems like it's a lot to ask for, and there's a good reason for that. There's hardly any precedent. In fact, when I used Westlaw AI to try to find that precedent, I came up with this case. AI isn't the answer. You've got to use your brain. Let me ask this. I think you have an 11th Amendment immunity problem, because in order to continue maintaining this case, you need to establish that there's an ongoing constitutional violation occurring. I don't see any evidence of that. Part of this is about what we've been talking about, whether you can get prospective injunctive relief, but part of it is that you're suing the state itself, which can only be sued if there's an ongoing violation. No, we're not. That's already been addressed in the first case. Jurisdiction extends throughout the life of the case, so even if there was this past harm or at least a dispute about the past harm, for example, Lyons, City of Los Angeles case, you have to have an ongoing constitutional violation in order to ask for injunctive relief going forward. What is that constitutional violation today? Today, it's the unextinguished liability that began with the 2018 instructions. Nothing has changed those instructions. They have papered over the cracks on the wall, but they haven't repaired the cracks on the wall. You don't think the resolution and the instruction by the superintendent and the vendor list has superseded whatever dispute there may have been about that email and don't go to Riley's Farms? Any single parent, any single protester on Twitter can go to that school district today and say, I don't like the guy. He voted for Trump. I don't like him, and I don't want my kid going there. They can say, what can I do? I'm not going to send him there. The point is this. They as in the school principals? Yeah, the principals. Are you asking that there be a mandatory field trip to Riley's Farms? Mandatory field trip. If people are able to protest, are you saying that the court should order that the school require students to visit Riley's Farms? In any case where a decision is made at the top level of any administration, they've got to examine the facts, determine whether there's liability involved in it, determine whether they're violating anybody's constitutional rights. Those determinations are not fairly kept at the principal level. That's something that the higher level of administration ought to be able to administrate. But why isn't this a speculative fear under the lion's rubric? Aren't you positing that in the future, despite what's changed, if a parent were to complain in the future, and the principals were to say, we don't want to go to Riley's, and the superintendent doesn't stand in the way of the school not going there, is that an actual injury to you? Because now it's the principals that are deciding not to go. It's an actual injury because it occurred, and there's been nothing done to remedy the problem. That might be a bit broad to say nothing done. There has been something done. Your argument is it was just a paper. Paper over the cracks. Sir. Yes, sir. You're kind of running out of time, so I want a real quick answer to this. How many, as I understood the briefing, there was a period of time when somebody from the school district went to Riley's, at least one field trip a year. What's that time frame? Up to 2018, when this incident occurred. Starting like a decade or more before that. I'm sorry? Starting a decade or more before that. Yes. Then you had this policy, non-policy, and then you have COVID, which we'd seen when there wasn't much going on. As I understood it in the briefing, there has been no field trip even since they have implemented this policy. Is that still the case? That's still the case, Judge. Okay, I'm going to ask the other side that too. Do you want to? Yeah, I mean, do you want to reserve time? I will reserve my time. Okay. Let me ask you right off the bat, the answer. Has anybody, to your understanding, gone to Riley's since you implemented these things that you're saying moved the case? No, no one has gone. No one has requested to go. I thought that was the case. Let me ask you what bothers me about this case. The school district, up until now, they've said they don't have a policy. They've never said we have a policy. So, you know, I think, as they point out, you're basically saying we didn't have a policy, but we've changed the policy, and that moves this case. And so, if you didn't have a policy before, and now you have some, we have some new facts, but we don't, but those new facts, I mean, we have a mix of facts here. We have the fact that nobody's gone to Riley's since, you don't disagree with the fact, at least for the purpose of this case, that there was a time when Game Ref as a principal, or as like an assistant superintendent or something, said something about, you know, you shouldn't go to the school. Correct. And you don't disagree with Riley's assertion that, you know, we had a teacher that was going to go to school and then said, I'm not going to, you know, and then basically changed her mind because she, and she told Riley's that she couldn't go. You don't disagree that that's a fact in it, because this is summary judgment stage, right? Right. Are you referring to the 2021 phone call? Yeah, the phone, where they called, they were told somebody wanted to go, and they called back to try to arrange it, and they said no. Right. I don't think we concede that that's true, but for some judgment purposes, I agree. That's a fact that we kind of have to have. And then we, and there's also the fact that that the school district has never, has never said they had a policy that you couldn't go to Riley's. So we have this, you can't, no policy saying you can't go to Riley's, but some facts that seem to indicate that people are being urged not to go to Riley's. Now we have the new facts that say, yeah, but we're now telling them that they, that they could go to Riley's, but we told them they couldn't. I don't understand, at the end of the day, when you put all that into the mixer, right, you put all that into the mixer, how, how you could dismiss this as moot, because the big problem I'm having is if there was no policy, yet people were not going to Riley's, there's still a supposedly no policy, people are still not going to Riley's, then why, why does that moot this case? Because it seems like if you provided an injunction, it might result in people going to Riley's. Well, the reason that the case was remanded the last time was because the prior panel concluded that there was a tribal issue of fact as to whether or not there ever was a policy to begin with, and whether or not that policy had been rescinded by anyone, and the But there wasn't a trial, right? There wasn't a trial. It said there were some new facts added, and those new facts are basically facts that would support that there's no policy, right? But you always said there was no, there's also facts in this record that would support that there's sort of a, an implicit or de facto policy, and there's, it's a mix of facts, and so I'm trying to figure out why, why, putting aside all the other stuff that we were talking about, why that moots the case. Well, there are two different things. One is an email saying don't go to Riley's Farm. Yeah. The other is a subsequent board resolution saying ignore that email, you can go to Riley's Farm if you want to, we're not discouraging you from doing it. Right, but nobody's gone to Riley's. I mean, there's some other facts, that's why I was mentioning, the other fact is that nobody, people stopped going to Riley's Farm, there's correlation, people stopped going to Riley's Farm when that old email went out. So, but nobody's still going to Riley's Farm, right? Like, the supposed new policy hasn't necessarily seemed to have changed that. So why, as a factual matter, isn't there just a dispute about, the same thing, the same dispute that was identified, and that the prior panel said we need to have a trial about, that to figure out this fact of whether there actually is a policy. I understand you're saying, no, no, no, look, we've got this nice policy thing, and I'm just saying I'm not sure that that actually kills the factual dispute. Well, what the prior panel focused on to create the triable issue of fact was the superintendent's testimony, what he actually testified was we haven't revisited it, in part because it was during COVID, and they weren't having field trips, so why would they revisit it? And also, a misreading of the deposition transcript, where in a separate paragraph, he, the superintendent responded to my partner's question to the superintendent, clarifying what the question was. And that, by the way, is no longer a position that the plaintiff should take. But I don't think that was, I don't think that was all of it. I think it was also that, you know, you also have the fact that visits had stopped, right? Visits, you know, that's a pretty important fact. That fact has not really changed. Visits haven't, there's no visits to the farm. And so, why, why wouldn't we just send it back and say, no, you know, there's a bunch of facts here, it's not, you're wrong, District Court, that there's not enough facts here to make their, there's not, there's enough facts here that there is a factual dispute of material fact. So have a trial, have the trial, and it might be that, it might be, there's definitely some facts in there that help you, but have the trial. I think maybe it would be a bench trial, because, and so then the judge can just sort through all this and actually hear witnesses, et cetera, and then maybe reach the same conclusion, but reach it after having actually resolved all these facts, right? Instead of pretending that there's not, because at the end of the day, they dispute that this paper that you, that's been written up actually means anything. That's what, that's what this case comes down to. They dispute that. And it's hard to think that, well, the paper has to trump everything when people still aren't going. And they were told not, and they were told not to go. Well, except that they've been told now that they can go if they want to. Yeah, but. And the, the. But why does that solve the problem? There, I, I share some of what Judge Van Dyke is talking about, the concerns of the prior panel. It seems like the prior panel's order has been subverted in some way. Now, the justification, because the prior panel said, go figure out whether there's a policy. And that never happened. Now, the argument is, well, you don't need to do that, because now we've, we've papered over it and it's done. But we get this all the time, where parties try and change policy in response to litigation. And the question is, is that enough? Is that, and, and your position is this is moot now, right? Not quite that it's moot. It's actually, it goes to the 11th Amendment issue that Judge Sanchez was talking about, that regardless of what may or may not have happened in the past, and again, the. It's not ongoing now. Correct. There, in order for the court to have jurisdiction to even consider. So you're, you're, but, but I don't understand how that's any different than mootness, because what you're arguing is, look, the prior panel said there was a dispute of fact. There is no longer a dispute of fact because it's not ongoing. There might've been, you know, the prior panel said there was this dispute of fact about what happened in 2018 up until the panel issued its decision. We've solved that problem. It's no longer happening. But that, that is all about a mootness question. I don't understand how it doesn't collapse into mootness, because the argument on the other side is, no, you haven't really done that. You, you've papered over it, but you haven't really changed your underlying policy. And we see that all the time, too, where, you know, somebody tries to adopt a policy in response to litigation, and we have a whole analysis about whether that's enough to, to change the case. But if we ruled for you here, wouldn't we just be giving every other litigant the opportunity to say, oh, geez, we've been sued on this policy. Let's just adopt a new policy, get out of litigation, and then go figure it out after that? Not exactly. What's the difference? The distinction is the reason that there's a narrow exception to the mootness rule for voluntary cessation. Exactly. And, but, but. And isn't that what we need to analyze? Well, perhaps, but, but even if we get into the voluntary cessation, and again, it's, it's narrow. So when a state agency is confronted with a fact that a mid-level administrator sent out an email six years ago, and someone is saying, you haven't. And everybody stopped going. Well, they stopped going before the email went. So there's, that's, that's part of the record. But that doesn't help you, right? Because that, that's, that means that there was an implicit policy, then there was kind of a, kind of a quasi-explicit policy. And what really, and your point is there was never a policy that they couldn't go, but they just all kind of stopped going. That's exactly, that's like saying, we don't have a policy that we're going to, like, just randomly search, like, people here that are unlawfully. But we've stopped that policy. I mean, I think our court would say, well, then that's not going to moot. I don't care so much about the, you know, because I think it's, I agree that whether you call it mootness or whether you call it just the factual question of whether there's an ongoing policy, I don't think it matters, right? I'll accept your framing of it. That's fine. But at the end of the day, I'm just struggling to see that they're actually, like, that what you put in writing, I, I, I'm acknowledging that what, not you, but your client, what your client has put in writing has actually clearly made sure that, like, this isn't actually something going on. Because they were, your client is saying there never was anything going on, but people stopped going. Well, I think this circles us right back to the question of redressability. Because what can the district court order the school board to do? The district court can enjoin a policy. I mean, the fact that you're fighting it so hard is what's interesting. Well. Because, because the district court could enjoin the policy and your position is, that's fine. We don't care. We never had that policy. Sure. And, and that actually takes me into the Melendrez point that I was going to make. The Melendrez court case that the prior panel cited that Mr. Becker mentioned involved a either side if the preliminary injunction is entered versus whether it's not. That's not part of the consideration here. If the only question were, can the court just say, don't stop people from going to Riley's Farm? Sure. And Claremont would say, we welcome that. In fact, we were never doing that. That's fine. The problem that we have and the reason why Melendrez isn't applicable here is because this is not a preliminary injunction where there would later be a trial to determine who's the prevailing party. Can I add? What the plaintiffs want. Yeah, finish your, go ahead. What the plaintiffs want is for the court to enter an injunction and then they go and collect their attorney fees for prosecuting a 1983 claim. Well, we see that all the time. Can I just ask something? I want to raise a question about this notion that people aren't going to Riley's anymore. As I understood the First Amendment retaliation claim, it was that the school district ordered schools not to attend Riley's. This case, as I understand it, this has never been a case about whether the school district is required to go to Riley's. It's about blocking people from going to Riley's. So if schools continue to decide on their own whether they are or are not going to Riley's, that's separate from whether there exists a policy to block schools from going to Riley's, isn't there? That's exactly the argument that we're making, is that... In other words, there might no longer be a policy and you might actually have a new policy that says do not block anyone from going to anywhere, including Riley's, and it still might lead to people not going to Riley's if the schools themselves choose not to go. Would that be the basis for a First Amendment retaliation claim? Absolutely not under ex parte young. If we were talking about a claim against the individuals who are acting in a way that may violate the First Amendment rights that the prior panel said may exist in that type of circumstance, that would be a completely different case. When we have an ex parte young claim against the board members and the superintendent and officials of the district, the only question is are these particular officials standing in the way of anyone who wants to go to Riley's Farm? And your argument is they never did, but there's this evidence that some people were preventing it and there also is evidence that they stopped going. And so, again, I just don't understand why there is not some factual dispute about that. Because your argument now is you're kind of trying to have it both ways. We never had a policy, but we've changed the policy. Well, we never had a policy and now we have made explicit that we don't have a policy. So to the extent there was a question in anyone's mind, any of these employees who were considering can I go to Riley's Farm, can I not? Am I being discouraged from doing that? And yet the effect of that, of what, of your prior non-policy, assuming the facts in the light most favorable to the other side, then the effect of that still seems to be ongoing. I don't understand how, why that wouldn't create a tribal issue of fact. That's all I'm kind of, that's all I care about is that would this go back to the district court and say no, you can't decide this on summary judgment. You actually, there's a factual dispute about an issue that, you can call it jurisdiction if you want, that goes to whether or not you actually have this ongoing policy. But at the end of the day, if the district court, because I think everybody's in agreement, that the district court can't order Claremont Unified School District to send field trips to Riley's Farm. Yeah, but if there's this policy that's standing in the way, this implicit policy, this understanding that's standing in the way, getting that out of the way by having an injunction, I agree that that doesn't necessarily mean people, because there's this other thing that could affect that, but you could, getting that out of the way is some sort of relief, right? Like getting the barrier, the policy that, assuming there's a policy, right? Assuming the district court was defined, yes, it turns out there's a policy after we, after you have witnesses and you have a trial and all that. Yes, there's a policy. Getting rid of it, why wouldn't that, why wouldn't, I mean, why wouldn't that be some relief for them? Because it would at least make it possible the teachers could then choose to go. Except that it wouldn't be any different than the written policy that already exists that says. But their dispute is that your written policies are not consistent with what actually is being, what actually is being, what the teachers actually are being told, which is what their argument was before. And you've always said we didn't have that policy. I don't think that's ever been the argument, and there certainly isn't any evidence of it. The evidence is that teachers were initially discussing, should we go to Riley's Farm, should we not? They made an initial decision, look, kindergartners can pick apples anywhere. Let's go to the place where parents aren't complaining about it. Well, okay, that's, now you're, as I understand it, there were meetings in leadership. Like there's facts about, I mean, I don't know whether they're true or not. That would be what the judge would discover. But you're changing the record. It may seem like, well, teachers were just signing this unilaterally. But there are facts in the record that would indicate that there was some direction coming from up above to not go. You would agree with that. I think your, I thought your argument was, yeah, but that's all been, that's all been cleaned up by these subsequent actions. Not exactly. Dr. Elsasser's declaration, we're looking at ER 134, says, I asked the principals to go back and talk to their teachers and see if any of them wanted to go to Riley's Farm. If anybody wanted to go, I would have found a way for them to go. Nobody wanted to go, so that was as far as the discussion went. Yeah, but the implication was they didn't want to go because they thought they couldn't. Some were backing out because they, rightly or wrongly, had the perception that the school board was saying, or I don't know if I'm saying the school board, but that there was sort of this discouragement from going. Well, and to the extent that they had that misperception, that has been removed. Any possibility of misperceiving. You're saying that that's been removed by these, and I'm saying, is it possible that you could make some explicit policies, but the discouragement would still be there? I think that's their argument, is that, no, there's a factual dispute on that. In that case, then voluntary cessation is no longer a narrow exception. No, it just means that you can't say, we don't do that. In any case ever. That's the standard that would set. Could I ask, so just as a matter of what this school district can do, they can't pass laws or ordinances, obviously, and they did adopt this resolution. What else could they do to say, no, really, we mean it. We don't want to block anyone from going to Riley. But conceivably, what else could the district adopt that would firm it up and not seem to paper over it in the other opposing sides' views? That's the question that I asked plaintiffs' counsel before I wrote that resolution. I said, what do you want me to put in the resolution? Because Claremont will adopt absolutely anything to make it clear that they're not standing in the way of going to Riley's Farm. And there wasn't a suggestion. Well, I mean, I guess just, is there a distinction between a resolution and a policy? Zero distinction. I mean, is one more enforceable than the other, I guess, is what I'm asking. No, there's some sort of, I mean, their argument is you need to take some sort of legislative action. What would be the equivalent of a legislative action? A resolution is a legislative action of a school board. They don't have the power to issue ordinances, to issue things that are enforceable in any sort of criminal or really even civil way. I hope not criminal. Right. Well, I mean, I guess they sort of could because some school districts have their own police departments. They could kick students out, I suppose, which could be punitive. Are they asking the school district to encourage people to go to Riley's? On a neutral level, I'm having a hard time seeing what else a school district could do as far as a legislative enactment. But it seems like we're now getting beyond a First Amendment retaliation claim if they're asking for someone to encourage people to go to Riley's. And I don't want to put words in anyone's mouth, so maybe that's the wrong reading. I think, and I'm sure that Mr. Becker will correct me if I'm wrong, but I think that the plaintiff concedes that the district court cannot order Claremont to go to Riley's Farm, cannot order Claremont to tell everybody you should go to Riley's Farm. The question is, what can the district court do that wouldn't violate separation of powers by telling a legislative body how to legislate, how to write its legislation? So we're talking about a negative injunction, a prohibitory injunction to say you cannot do X. You cannot stand in the way of anyone going to Riley's Farm. And they've said, look, we've put it in the most formal way we can. We had an email that went out that there was a question from the Ninth Circuit. They said, we're not sure if this email is still affecting anyone's perception of what your policy is. They said, we'll clear that up for you. We don't have a policy. That's as formal as they can make it. Then the superintendent. Well, it's not as formal as they make it because if I'm the leadership of an organization and I make it clear to everybody, I don't want them to take some action, right? And then as a result of litigation, I come back and say, okay, I guess you can take that action, right? Presumably, the people realize that I was talking about the employees, whatever you want, the teachers in this case, realize, yeah, well, I know what the leadership actually thinks, right? So in theory, there could be a residual effect of those former actions, even though now if you have a judge come in and issue an injunction and say, no, you can't do that, maybe that frees up those teachers to do what they actually want and not have to continue to try to comply with what they know the leadership actually wants, but they know the leadership can't, you know, had to say something different for the purpose of litigation. I mean, you acknowledge that the statement was in response to litigation. They only changed. Well, you say they didn't change. They only did this in response to litigation. They only clarified it because the prior panel said that there was a question of fact as to whether there was a policy, and so we clarified that there wasn't. But there's two important facts in the record that address your point. One is that no teacher is still gone, even though for years, every year, for like over a decade, teachers went. So that's one of the facts. It doesn't help you in record. What's the other ones? Well, Dr. Elsasser, in 2020 through 2021 and 2021 through 2022, was at a different school district that went to Riley's Farm. He didn't stand in anyone's way, and so no one could reasonably, no one employee at Fenway. But now you're running into law of the case. In my view, now you're running into law of the case because we said, the prior panel already said, there's a disputed fact about whether there's a policy under that. Well, no, that fact didn't exist. That happened after? Yes. The 21? Okay, so just the first part. Yes. Okay. Yeah, and then the other fact is that the… Then it works the other way. Now you've got somebody who's got a decision against him from the prior panel against this, and so he's not going to take actions at that point. Like, he's not going to violate what he thinks the court's saying. He's responding to the litigation, is my point. Well, no, I mean, there's two things. One is that the timeline is off slightly, that this was taking place after Dr. Elsasser was deposed in this case, but then before and after the panel's decision was made in the prior appeal. So it wasn't just in reaction to litigation or to a decision from the court. It was he really doesn't care if anyone goes to Riley's Farm. And so any employee of Claremont who's looking at this and saying, am I going to get in trouble with my superintendent if I do this, even though he's telling me that I can? Well, all you have to do is look at what happened in the other district that he worked at for two years. That could be a fact in your favor on this. The other fact that I mentioned earlier could go the other way. I mean, at the end of the day, I still have trouble seeing why there's not a disputed issue of fact. I understand that you want to read it. It's always the case. Each side wants to read the facts in their favor, but that ultimately, you know, there can't be any disputed issues of fact that go the other way for you to win at the procedural posture that you're in now. Sure. But if the court is going to assert jurisdiction over the 11th Amendment immunity, based on the presumption that folks not going to Riley's Farm for a handful of school years since COVID was lifted, means that there must be some underlying policy going through. No, no, no, no. Just that there's a factual dispute about that policy. I mean, this is not unusual, right? If we had a case, let's put it in stuff that comes up. If we had a case where a police department were only stopping, you know, black individuals on the street, and then they got sued and said, you're discriminating, and they said, okay, well, we're going to solve that. We'll issue a policy saying don't only stop black individuals. And that you went back and looked and 98% of the stops were still black individuals. We'd be in here again in the same circumstances. So that doesn't mean that they're violating the law. That means there's a dispute about whether the policy has been changed or not. And that I don't I mean, why don't we just resolve it? If the district court had done that on remand, he could have just had a two-day bench trial or maybe it's a jury trial. I don't know the answer to that. And we could be done. At the end of the day, if it were Claremont, don't stop anyone from going to Riley's Farm. No one at Claremont would bat an eye at that. What would happen is the plaintiffs would then ask for millions of dollars in attorney fees. And they may get it. That's I'm sorry. We didn't write the law, but we face this all the time on civil rights litigation. And the point is you can't get out of those repercussions by papering over a policy that was already violent. I thought the panel decided there's no damages remedy because of qualified immunity. There was no damages. Oh, for attorney fees. Correct. Yeah. I mean, isn't the answer that the court couldn't proceed if it doesn't have jurisdiction under the 11th Amendment? Well, that's always been the primary argument. I mean, I thought that was what the court felt constrained by was I don't have jurisdiction to continue with this case because there's no evidence of any ongoing constitutional injury. That has always been the primary argument. If there's no existing policy today, then there's no jurisdiction. I think we agree with that. We could keep going forever. This is interesting. But we've taken you over. And we'll give you a little bit of time for rebuttal. Let's give him three minutes for rebuttal. Thank you. I really don't want to take a lot of your time, Your Honors. The first point I want to get to, though, is that school boards can adopt policies. How do I know that? Because they do. Because this school district has adopted policies. Resolutions are not policies. And also, and I don't know if it's correct to do this, but counsel and I have settled some other school district's cases, and part of the settlement involved the adoption of policies and language that we've put together to adopt those policies. Mr. Becker, if the school district adopted the current resolution into a policy, would that satisfy your concerns? I'd have to take a look at it as written, Your Honor. Here's my concern, though. It has to have teeth. It has to constrain principals and teachers so that they don't stray. And what does that involve? Reviewability. That means superintendents have to have them. And, by the way, in race cases, consent decrees, you usually have the appointment of a court for a period of time where they monitor things and they ask questions, they review it. We can do that here just within the administration itself. The superintendent can be that kind of person. So an order might involve that kind of direction. But in race cases, that's what I've seen happen. Now, another thing Judge Sands says, we want to flip the facts just a little bit. Let's say this were some conservative northern California county with a conservative school district who wanted to stop sending field trips to some destination because the owner was gay or the owner said something they didn't like politically. This holding here today, whatever it may be, has got to be generally applicable to anticipate situations involving every stripe of political interest. And so I don't want to be standing here and saying this is just a simple example. We're seeing in this culture right now lots of examples of people losing their liberty. And when my client tonight goes back to Riley's Farm and puts on his Patrick Henry costume and talks about preserving liberty or death, he means it. And in this case, all we're trying to do is preserve the right of people to be able to run their businesses without being challenged by those who have gone on to social media and begun to dissect their lives entirely. But to finish up, the power to adopt a policy I think is there, and I think there is a way for this court to say that the trial court has facts. I'm good with that. I hear you. Thank you very much. Thank you to both counsel. Thank you, Your Honor. The case is now submitted.
judges: NELSON, VANDYKE, SANCHEZ